UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KELLY P.,[1]

       Plaintiff,

                                **Case No. 2:20-cv-14535**

   v.                       **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

       Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Kelly P. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on April 5, 2017, and March 23, 2017, respectively, alleging that she has been disabled since February 13, 2015. R. 316–17, 348–49, 475–81. The applications were denied initially and upon reconsideration. R. 350–56, 361–63. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 364–65. ALJ Kevin Kenneally held a hearing on May 2, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 250–93. In a decision dated June 24, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 13, 2015, Plaintiff's alleged disability onset date, through the date of that decision. R. 228–39. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 14, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 19, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 16.[3] On that same day, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

3

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 41 years old on her alleged disability onset date. R. 238. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. R. 231. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 13, 2015, her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease; osteoarthritis in her knees, status post right knee arthroscopy and left knee meniscal tear; carpal tunnel syndrome; peripheral neuropathy; vestibular dysfunction; psoriasis; and an adjustment disorder. *Id.* The ALJ also found that the diagnosed impairments of urinary incontinence and gastritis and Plaintiff's alleged impairment of palpitations were not severe. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 231–33.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 233–38. The ALJ also found that this RFC did not permit the

performance of Plaintiff's past relevant work as a medical technician. R. 238.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as an addresser, a document preparer, and an information clerk—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 238–39. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 13, 2015, her alleged disability onset date, through the date of the decision. R. 239.

Plaintiff disagrees with the ALJ's findings at steps two, three, and four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Moving Brief,* ECF No. 15. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20.

## IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.     Kim Arrington, Psy.D.

On October 14, 2017, Kim Arrington, Psy.D., conducted a consultative psychiatric examination. R. 963–67. Upon mental status examination, Dr. Arrington observed that Plaintiff's demeanor and responsiveness to questions were cooperative; her manner of relating, social skills, and her overall presentation were adequate; her hygiene and grooming were fair; her eye contact was good; her speech intelligibility was fluent; her expressive and receptive language was adequate; her thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia; her affect was depressed and her mood was dysthymic;

8

and she was oriented times three. R. 964. Plaintiff's attention and concentration were normal as she was able to do counting and simple calculations and she was able to spell the word "world" forward and backwards. R. 965. Plaintiff's "recent and remote memory skills were mildly impaired possibly due to depression." *Id*. Plaintiff could recall 3/3 objects immediately and 2/3 objects after five minutes and was able to repeat five digits forward and two digits backwards. *Id*. Dr. Arrington estimated that Plaintiff's intellectual functioning was in the average range, her insight fair, and her "judgment ranges from fair to poor due to mood fluctuations." *Id*. Dr. Arrington provided the following medical source statement:

> With regard to the daily functioning of the claimant, she is able to follow and understand simple directions and instructions. She is able to perform simple tasks independently. She is able to maintain attention and concentration. She will have mild difficulty learning new tasks and performing complex tasks due to problems with memory. She would be able to maintain a regular schedule. Her difficulties appear attributable to depression and anxiety. The results of the present evaluation appear to be consistent with psychiatric problems which may significantly interfere with the claimant's ability to function on a daily basis.

*Id*. Dr. Arrington's impression was adjustment disorder with mixed anxiety and depressed mood. *Id.* He recommended that Plaintiff continue with her current psychiatric treatment and opined that her prognosis was fair and that she could manage her own funds. *Id*.

**B.     Jasmine Hayes, L.A.C.**

On September 1, 2017, Jasmine Hayes, L.A.C., completed a three-page, check-the-box, and fill-in-the-blank form entitled, "Medical Opinion Questionnaire (Mental Impairments) Independent of Alcoholism and Drug Addiction." R. 1768–70. Ms. Hayes indicated that she treated Plaintiff bi-weekly with 45-minute to 1-hour therapy sessions. R. 1768. She diagnosed an adjustment disorder with mixed anxiety and depressed mood, manifested as decreased performance. *Id*. Ms. Hayes assessed Plaintiff's work-related mental abilities and aptitude, using the following scale: unlimited or very good, *i.e.*, the ability to function in this area is satisfactory

9

or more; good, *i.e.*, the ability to function in this area is limited, but satisfactory; fair, *i.e.*, the ability to function in this area is seriously limited but not precluded; and poor or none, *i.e.*, no useful ability to function in this area. *Id*. Ms. Hayes opined that Plaintiff had an "unlimited" or "very good" ability to interact appropriately with the general public; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. *Id*. Plaintiff had a "good" ability to travel in unfamiliar places; understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; understand and remember detailed instructions; and carry out detailed instructions. R. 1768–70. Plaintiff had a "fair" ability to use public transportation; remember work-like procedures; maintain attention for two-hour segment; maintain regular attendance and be punctual within customary, usual strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; deal with normal work stress; and deal with stress of semiskilled and skilled work. *Id*. However, Plaintiff had a "poor or no" ability to perform at a consistent pace without an unreasonable number and length of rest periods. R. 1769. According to Ms. Hayes, Plaintiff's impairments or treatment would cause her to be absent from work more than twice per month. R. 1770. Ms. Hayes also opined that Plaintiff could manage benefits in her own best interest and confirmed that there was "[n]o use of drugs or alcohol present." *Id*.

10

On January 15, 2018, Ms. Hayes again completed the three-page, check-the-box, and fill-in-the-blank form entitled, "Medical Opinion Questionnaire (Mental Impairments) Independent of Alcoholism and Drug Addiction." R. 1771–73. Ms. Hayes continued to see Plaintiff at 45-minute therapy sessions on a biweekly basis. R. 1771. Ms. Hayes' diagnoses remained the same; she commented: "Hard time adjusting to current life circumstance." *Id*. Using the same scale to assess Plaintiff's work-related mental abilities and aptitude, Ms. Hayes opined that Plaintiff had a "good" ability to interact appropriately with the general public; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; travel in unfamiliar places; use public transportation; remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usual strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; understand and remember detailed instructions; carry out detailed instructions; set realistic goals and work independently of others. R. 1771–73. Plaintiff had a "fair" ability to maintain attention for two-hour segment; respond appropriately to changes in a routine work setting; deal with normal work stress; and deal with stress of semiskilled and skilled work. R. 1772–73. However, Ms. Hayes again opined that Plaintiff had a "poor or no" ability to perform at a consistent pace without an unreasonable number and length of rest periods. R. 1772. Ms. Hayes explained: "Ct's impairments are physical which she has a

hard time adjusting to psychologically. Due to this, Ct experiences significant distress from physical limitations." R. 1773. According to Ms. Hayes, Plaintiff's impairments and treatment would cause Plaintiff to be absent from work more than twice per month. *Id*. Ms. Hayes also opined that Plaintiff could manage benefits in her own best interest. *Id*.

## V.   DISCUSSION

### A.   Obesity

Plaintiff first argues that the ALJ wholly failed to consider Plaintiff's obesity at step two of the sequential evaluation and failed to meaningfully evaluate her obesity at subsequent steps of the sequential evaluation, thus requiring remand. *Plaintiff's Moving Brief*, ECF No.15, pp. 8–26. Plaintiff's arguments are not well taken.

In 2000, the Commissioner removed obesity as a "listed impairment," but the Court of Appeals for the Third Circuit has recognized that this action "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "Rather, the Commissioner has since promulgated a series of SSRs, which indicate how obesity is to be considered under the listings." *Abigail L. v. Kijakazi*, No. CV 21-2275 (FLW), 2022 WL 16362468, at *9 (D.N.J. Oct. 27, 2022) (citations omitted). The Commissioner initially promulgated SSR 00-3p, which "replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Diaz*, 577 F.3d at 503. "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00-3p." *Id*. (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to

12

the extent that the combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders."). Most recently, SSR 19-2p rescinded and replaced SSR 02-1p, effective May 20, 2019. SSR 19-2p, 2019 WL 2374244, at *5 (May 20, 2019); *see also id.* at n.14 ("We will use this SSR beginning on its applicable date [of May 20, 2019]. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Other courts have observed that SSR 02-1p and SSR 19-2p "are largely consistent in their discussion of how obesity should be analyzed[.]" *Heck v. Comm'r of Soc. Sec. Admin.*, No. 1:20CV2133, 2021 WL 6693720, at *10 (N.D. Ohio Dec. 28, 2021), *report and recommendation adopted sub nom. Heck v. Comm'r of Soc. Sec.*, No. 1:20CV2133, 2022 WL 228163 (N.D. Ohio Jan. 26, 2022) (collecting cases); *see also Huntley v. Kijakazi*, No. 1:20CV862, 2021 WL 5834406, at *8 (M.D.N.C. Dec. 9, 2021) (agreeing with the Commissioner that under either SSR 02-1p or SSR 19-2p, "'the ALJ is tasked with explaining how he reached his conclusion on whether obesity causes any limitations' and is warned that 'the combined effects of a claimant's obesity with other impairments may be greater than might be expected without obesity'") (citations omitted).

SSR 19-2p advises that "[o]besity, when established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source (AMS), is an MDI [medically determinable impairment]." *Id.* at *2. SSR 19-2p addresses the determination of obesity as a severe impairment, as follows:

When we evaluate the severity of obesity, we consider all evidence from all sources. We consider all symptoms, such as fatigue or pain that could limit functioning. We consider any functional limitations in the person's ability to do basic work activities resulting from obesity and from any other physical or mental impairments. If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe. We find, however, that the impairment(s) is "not severe" if it does not significantly limit [a person's] physical or mental ability to do basic work activities.

No specific weight or BMI establishes obesity as a "severe" or "not severe" impairment. Similarly, a medical source's descriptive terms for levels of obesity, such as "severe," "extreme," or "morbid," do not establish whether obesity is a severe impairment for disability program purposes. We do an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe.

*Id*. at *3–4 (footnotes omitted). SSR 19-2p also specifically advises how to evaluate obesity under the listings:

Obesity is not a listed impairment; however, the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing. For example, obesity may increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing.

We will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment. We evaluate each case based on the information in the case record.

*Id*. at *4. (footnotes omitted); *see also id.* at n.11 (citing 20 C.F.R. §§ 404.1526 and 416.926).

Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504; *see also Abigail L.*, 2022 WL 16362468, at *10 ("Although the parties do not dispute that SSR 19-2p rescinded and replaced its predecessor SSR 02-01p, the Commissioner fails to cite a single authority that challenges the applicability of *Diaz*'s meaningful review instruction. Notably, several courts in this district have continued to

14

apply such guidance in the context of SSR 19-2p.") (collecting cases). "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016) (quoting *Jones,* 364 F.3d at 505). Notably, a claimant must demonstrate "*how* [the claimant's] obesity . . . affect[s the claimant's] ability to perform basic work activities," not simply that it could impact such ability. *Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (affirming denial of benefits where the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original).

In the present case, the ALJ failed to consider or even mention Plaintiff's obesity at step two. R. 231. However, the ALJ found other impairments severe at that step and went on to evaluate Plaintiff's impairments, as well as her obesity, through the remainder of the five-step evaluation, as discussed later in more detail. R. 231–37. Notably, Plaintiff, who bears the burden of proof at step two, has not pointed to any harm flowing from the ALJ's alleged error in failing to consider her obesity at step two under these circumstances. *See generally Plaintiff's Moving Brief*, ECF No. 15. Accordingly, even if the ALJ erred by not finding her obesity to be severe, any such error at step two is harmless based on this record. *See Salles*, 229 F. App'x at 145 n.2; *Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6.

At step three, the ALJ expressly noted the guidelines set forth in SSR 19-2p and concluded that Plaintiff's obesity, when considered in combination with her other impairments, does not meet or medically equal any listing, reasoning as follows:

> Although there is no specific medical listing for obesity, vestibular dysfunction, or psoriasis, these impairments can complicate and aggravate existing physical and

15

mental impairments, and can alone or in combination with other impairments medically equal a listing. However, in this case the undersigned has evaluated the claimant's obesity, vestibular dysfunction, and psoriasis pursuant to the guidelines set forth in SSR 19-2p and has found that the functional effects of the claimant's impairments do not equal any medical listing.

R. 233. At step three, the ALJ also considered Listing 1.02, which addresses major dysfunction of a joint, and Listing 1.04, which addresses disorders of the spine,[4] and concluded that Plaintiff did not meet or medically equal either Listing. R. 231. At step four, the ALJ again specifically noted Plaintiff's obesity, R. 236, when crafting the RFC. Accordingly, the ALJ's discussion properly considered Plaintiff's obesity at step three and at subsequent steps when the ALJ recognized that he must also consider, when determining Plaintiff's RFC, the effect of Plaintiff's obesity on her other impairments but found that none of Plaintiff's impairments, whether considered singly or in combination —including Plaintiff's musculoskeletal and joint impairments—met or equaled a listed impairment, and specifically and in detail considered Plaintiff's musculoskeletal and joint impairments, intact sensation and reflexes, normal muscle strength throughout her bilateral upper and lower extremities, full range of motion in her cervical and lumbar spine despite evidence of degenerative disc disease, and her ability, in general, to ambulate normally, despite one reference to a "slight limp" with tenderness in the left knee in October 2017. *See* R. 234–37; *see also* SSR 19-2p; *Diaz*, 577 F.3d at 504; *Woodson*, 661 F. App'x at 765–66; *Jones*, 364 F.3d at 505 (stating that if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination"); *Abigail L.*, 2022 WL 16362468, at *10 (finding that, "notwithstanding the

---

[4] The Court addresses these impairments later in the *Opinion and Order*.

16

ALJ's scant analysis of Plaintiff's obesity at step three, the ALJ's opinion, read in its entirety, permits meaningful review of Plaintiff's obesity"); *cf. Rivera v. Comm'r of Soc. Sec*., 164 F. App'x 260, 263 (3d Cir. 2006) (finding that the ALJ's conclusory statement in step three was harmless where, "in reviewing the voluminous medical evidence available to us, we found abundant evidence supporting the position taken by the ALJ, and comparatively little contradictory evidence"); *Steven James F. v. Comm'r of Soc. Sec*., No. 1:20-CV-14183-NLH, 2022 WL 2703009, at *4 (D.N.J. July 12, 2022) ("The fact that the ALJ did not repeatedly cite to Plaintiff's obesity thereafter [after saying that he had considered the claimant's obesity as required by SSR 19-2p] does not undermine the ALJ's decision as the ALJ is not required to discuss every tidbit of evidence in the record. . . . Looking at the ALJ's opinion holistically in light of the record as a whole, the Court is satisfied that the ALJ considered Plaintiff's obesity and applied the correct legal standard.").

Plaintiff, however, insists that the ALJ's consideration at step three is flawed because the ALJ considered Plaintiff's obesity in combination with only her vestibular dysfunction and psoriasis, and not her other impairments. *Plaintiff's Moving Brief*, ECF No. 15, pp. 16–17. Plaintiff's argument is not well taken. While it is true that the ALJ expressly referred to only Plaintiff's vestibular dysfunction and psoriasis when discussing Plaintiff's obesity, the ALJ also specifically noted in that discussion that "these impairments can complicate and aggravate existing physical and mental impairments, and can alone *or in combination with other impairments* medically equal a listing." R. 233 (emphasis added). The ALJ also expressly stated at step three that Plaintiff did not have an impairment or "combination of impairments" that met or medically equaled a listed impairment. R. 231; *see also* R. 231–33 (considering Plaintiff's physical and mental impairments at step three of the sequential evaluation). Where the ALJ

explicitly indicated that he had considered Plaintiff's impairments singly and in combination, R. 231–33, there is "no reason not to believe" that the ALJ did so consider. *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008); *see also Ollie v. Comm'r of Soc. Sec.*, No. 13-03297, 2014 WL 1272180, at *6 (D.N.J. Mar. 26, 2014) ("An ALJ fulfills [his or] her duty to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that [he or] she has done so, and there is 'no reason to not believe [him or] her.'") (quoting *Morrison*, 268 F. App'x at 189).

Plaintiff also complains that the ALJ did not meaningfully evaluate her obesity at step three, as required by *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009). *Plaintiff's Moving Brief*, ECF No. 15, pp. 17–20. This Court disagrees. In *Diaz*, the Court of Appeals for the Third Circuit remanded the case because the ALJ had found obesity to be a severe impairment at step two but did not discuss obesity at step three in combination with the claimant's joint dysfunction. *Diaz*, 577 F.3d at 504–05 (stating, *inter alia*, that "[w]ere there *any* discussion of the combined effect of Diaz's impairments, we might agree with the District Court [and not remand the case]"). In contrast, in the present case, although scant, the ALJ expressly discussed Plaintiff's obesity at step three in combination with Plaintiff's 'other impairments, R. 233, and again considered her obesity at step four when fashioning the RFC, R. 236. Accordingly, because the ALJ provided at least some discussion of Plaintiff's obesity at steps three and four, *Diaz* is distinguishable. *See Diaz*, 577 F.3d at 504; *see also Leonardis v. Comm'r of Soc. Sec.*, No. CV 18-13098, 2020 WL 6281606, at *3 (D.N.J. Oct. 27, 2020) (distinguishing *Diaz* and finding that the ALJ's statement that he considered obesity in accordance with the applicable Social Security rulings along with a discussion of the claimant's impairments was sufficient under Third Circuit law); *Farmer v. Comm'r of Soc. Sec.*, No. CV 19-13437, 2020 WL

6620152, at *2 (D.N.J. Nov. 12, 2020) (same); *cf. C.S. v. Comm'r of Soc. Sec.*, No. CV 19-20845, 2021 WL 5195702, at *5 (D.N.J. Nov. 9, 2021) ("Moreover, Plaintiff has failed to identify any record evidence showing that a more thorough consideration of obesity would have changed the ALJ's analysis. As such, the ALJ's analysis at step three was sufficient.").

Moreover, even if the ALJ's discussion was deficient under *Diaz*, Plaintiff has not shown how any error in this regard was harmful. Plaintiff does not explain how her obesity, individually or in combination with any other impairment, meets or medically equals a listed impairment nor does she identify any specific functional limitation caused by her obesity. *See generally Plaintiff's Moving Brief*, ECF No. 15. Notably, neither the ALJ nor the Court will "make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment." SSR 19-2p, 2019 WL 2374244, at *4 (emphasis added); *see also Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) ("In any event, remand to reconsider her combined impairments is not required because Carter has relied on the language of SSR 02-1p stating that obesity *can* impair one's ability to perform basic work activities rather than specifying *how* her obesity or headaches affected her ability to perform basic work activities" and that the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original); *Woodson*, 661 F. App'x at 765 ("Woodson simply speculates about how his obesity might exacerbate other impairments—his back disorder, complaints of pain, arthritic knees, congestive heart failure, asthma attacks, or sleep apnea . . . . But Woodson never points to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling. Instead, the evidence before the ALJ suggests

19

otherwise."). Accordingly, Plaintiff, who bears the burden of proof at steps three and four of the sequential evaluation, has not shown that the ALJ's error, if any, in failing to more thoroughly discuss Plaintiff's obesity is anything other than harmless error that does not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case"); *Abigail L. v. Kijakazi*, No. CV 21-2275, 2022 WL 16362468, at *10 (D.N.J. Oct. 27, 2022) ("[E]ven assuming that Plaintiff is correct that the ALJ's analysis was deficient at steps three and four, Plaintiff fails to demonstrate how further consideration of her obesity would have changed the ALJ's ultimate determination that she was not entitled to benefits.").

**B.     Step Three**

Plaintiff next complains that the ALJ's analysis at step three of the sequential evaluation is flawed because it does not discuss medical equivalence, nor does it consider the combination of all of Plaintiff's impairments. *Plaintiff's Moving Brief*, ECF No. 15, pp. 15–26. Plaintiff specifically complains that the ALJ erred in evaluating her vestibular dysfunction, psoriasis, peripheral neuropathy, and carpal tunnel syndrome. *Id.*

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364

F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

In the present case, at step two, the ALJ determined that Plaintiff suffered the severe impairment of, *inter alia*, vestibular dysfunction and psoriasis. R. 231. Plaintiff complains that the ALJ erred at step three when the ALJ stated that there was no specific medical listing for vestibular dysfunction and psoriasis. *Plaintiff's Moving Brief*, ECF No. 15, p. 15. Plaintiff contends that Listing 2.07[5] and Listing 8.05, [6] respectively, address these impairments and,

---

[5] Listing 2.07 addresses the disturbance of labyrinthine-vestibular function, which is "characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.07. To meet this listing, a claimant must demonstrate both a "[d]isturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests" and "[h]earing loss established by audiometry." *Id.*

[6] Listing 8.05 addresses dermatitis, such as psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.05. This listing

therefore, this error establishes "conclusively" that the ALJ did not engage in the medical equivalence analysis because the ALJ was unaware of these listings. *Id*. Plaintiff has not persuaded this Court that this issue requires remand. Even assuming that the ALJ erred in stating that there was no listing for either of these impairments, any alleged error is harmless. Plaintiff, who bears the burden of proof at step three, offers no substantive analysis of the evidence—or any analysis whatsoever—relative to Listing 2.07 or Listing 8.05. *See Plaintiff's Moving Brief*, ECF No. 15, p. 15; *cf. Sullivan*, 493 U.S. at 531 (stating that under an equivalence argument, a claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment") (emphasis in the original) (citations omitted). Nor will the Court hunt through the record to find support for Plaintiff's conclusory assertion that she meets or medically equals these listings. *See Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."). Where Plaintiff has not explained how she met or medically equaled either Listing 2.07 or Listing 8.05, any error on the part of the ALJ in this regard was harmless and does not require remand. *See Shinseki*, 556 U.S. at 409−10.

---

requires "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." *Id*.; *see also id.* at § 8.05C1 ("Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation."). Examples of the requisite skin lesions include the following: Skin lesions that interfere with the motion of the joints and that very seriously limit the claimant's use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity; skin lesions on the palms of both hands that very seriously limit the claimant's ability to do fine and gross motor movements; and skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit the claimant's ability to ambulate. *Id*. at § 8.05C1(a)–(c).

Plaintiff also argues that the ALJ erred in finding that she did not meet or medically equal Listing 1.04. *Plaintiff's Moving Brief*, ECF No. 15, pp. 24–25. Plaintiff's argument is not well taken. In order to meet Listing 1.04, which addresses disorders of the spine, a claimant must demonstrate the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. [7]

---

[7] Section 1.00B2b defines an inability to ambulate effectively as follows:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Here, the ALJ determined at step two that Plaintiff suffered from the severe impairments

of, *inter alia*, degenerative disc disease; osteoarthritis in her bilateral knees, status post right knee

arthroscopy and left knee meniscal tear; and peripheral neuropathy. R. 231. The ALJ went on to

determine at step three that Plaintiff's impairments, whether considered singly or in combination,

did not meet or medically equal any of the listed impairments, including Listing 1.04, reasoning

as follows:

> The undersigned also considered listing 1.04, but finds that the severity of this
> listing is not met or medically equaled because treatment records do not establish
> that the claimant had positive straight leg raise tests in the sitting and supine
> position bilaterally or that she experienced motor, reflex, or sensory loss. (Ex. 7F,
> p. 3 [R. 792]; 8F, pgs. 4, 8 [R. 851, 855]; 16F, p. 2 [R. 962]; 34F, p. 115 [R. 1437];
> 38F, p. 14 [R.1640).

*Id*.

Plaintiff challenges this analysis, arguing that the ALJ's finding that Plaintiff experienced

no sensory loss is inconsistent with—and undermined by—the ALJ's finding at step two that

---

living. They must have the ability to travel without companion assistance to and
from a place of employment or school. Therefore, examples of ineffective
ambulation include, but are not limited to, the inability to walk without the use of
a walker, two crutches or two canes, the inability to walk a block at a reasonable
pace on rough or uneven surfaces, the inability to use standard public
transportation, the inability to carry out routine ambulatory activities, such as
shopping and banking, and the inability to climb a few steps at a reasonable pace
with the use of a single hand rail. The ability to walk independently about one's
home without the use of assistive devices does not, in and of itself, constitute
effective ambulation.

*Id*.

Plaintiff's peripheral neuropathy, which is characterized by the loss of sensation, is severe.
*Plaintiff's Moving Brief*, ECF No. 15, pp. 24–25. The Court is not persuaded that this issue
requires remand. Notably, "[t]he burden imposed on a claimant at step three is a far more
exacting standard than step two's threshold (used to prevent frivolous claims), which requires
that a claimant show that she suffers from a 'severe' impairment." *Williams v. Comm'r of Soc.
Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005); *see also Fleischman v. Comm'r of Soc. Sec.*, No.
CIV. 12-4869, 2014 WL 809006, at *6 (D.N.J. Feb. 28, 2014) ("The standards [at steps two and
three] are different: one standard is a "*de minimis* screening device," *Newell*, 347 F.3d at 546,
whereas the other is a medical determination "whether the impairment is on a list of impairments
presumed severe enough by the SSA to render one disabled," *Ramirez v. Barnhart*, 372 F.3d 546,
550 (3d Cir. 2004)). As set forth above, the ALJ cited to record evidence at step three that the
medical records did not establish that Plaintiff experienced motor, reflex, or sensory loss. R. 231
(citing, *inter alia*, R. 792 (containing physical examination in April 2016, reflecting, *inter alia*,
that Plaintiff had normal motor, reflexes, and sensation in upper and lower limbs), 851
(containing physical examination reflecting, *inter alia*, that Plaintiff's "[m]otor examination
revealed normal bulk, tone, and strength throughout"; "[s]ensory examination was intact to light
touch in all extremities"; and "[d]eep tendon reflexes were 1-2+ throughout and bilaterally
symmetrical"); 855 (containing physical examination from January 2017, reflecting, *inter alia*,
same medical findings regarding Plaintiff's motor, sensory, and reflexes), 962 (containing
physical examination from August 2017, reflecting, *inter alia*, that Plaintiff had no sensory
deficits and her deep tendon reflexes were normal), 1640 (containing physical examination from
January 2018, revealing, *inter alia*, intact sensations; normal and symmetrical reflexes)). The
ALJ again noted at step four that physical examinations revealed that Plaintiff's motor, reflex,

and sensory skills were intact or normal. R. 234–236. Plaintiff has not explained how the ALJ's finding at step two that Plaintiff's peripheral neuropathy was severe establishes that Plaintiff met or medically equaled Listing 1.04. *See Plaintiff's Moving Brief*, ECF No. 15, pp. 24–25. Accordingly, based on this record, even where the ALJ's finding at step two that Plaintiff's peripheral neuropathy was severe and therefore resulted in some deficit, Plaintiff has not established that this step two finding, by itself, establishes that any functional limitations flowing from that impairment are sufficient to meet or medically equal Listing 1.04. *See id.*; *see also Williams*, 156 F. App'x at 505; *Fleischman*, 2014 WL 809006, at *6; *cf. Gunder v. Astrue*, No. 4:11-CV-00300, 2012 WL 511936, at *14 (M.D. Pa. Feb. 15, 2012) ("Consequently, despite the fact that Gunder's peripheral neuropathy results in some sensory deficits, the functional limitations he experiences are insufficient to meet or equal the requirements of Listing 11.14.").

In continuing to challenge the ALJ's consideration of her impairments at step three, Plaintiff contends that the ALJ's finding that she did not meet or medically equal Listing 1.02 is flawed. *Plaintiff's Moving Brief*, ECF No. 15, p. 25. The Court is not persuaded that this issue requires remand. In order to meet Listing 1.02, which addresses major dysfunction of a joint(s) (due to any cause), a claimant must demonstrate the following:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or

> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02; *see also id.* at § 1.00B2b (addressing the ability to ambulate effectively).

Here, as previously discussed, the ALJ determined at step two that Plaintiff suffered from the severe impairments of degenerative disc disease; osteoarthritis in her bilateral knees, status post right knee arthroscopy and left knee meniscal tear; carpal tunnel syndrome; peripheral neuropathy; vestibular dysfunction; psoriasis; and an adjustment disorder. R. 231. At step three, the ALJ determined that Plaintiff's impairments, whether considered singly or in combination, did not meet or medically equal any of the listed impairments, including Listing 1.02, reasoning as follows:

> The undersigned considered listing 1.02, but finds that the severity of this listing is not met or medically equaled because treatment records do not establish that the claimant has an inability to ambulate effectively or an inability to perform fine and gross movements effectively. (Ex. 7F, p. 3; 8F, pgs. 4, 8; 16F, p. 2; 34F, p. 115; 38F, p. 14).

*Id.*

Plaintiff concedes that the ALJ's "findings [in this regard] are not necessarily wrong," but argues that "they are simply incomplete[,]" arguing that the ALJ should have considered medical equivalence as it relates to Listing 1.02. *Plaintiff's Moving Brief*, ECF No. 15, p. 25. However, as the Court has already explained, where the ALJ explicitly indicated that he considered the impairments singly and in combination, R. 231–33, there is "no reason not to believe" that the ALJ did so. *See Morrison*, 268 F. App'x 186, 189 (3d Cir. 2008); *see also Ollie*, 2014 WL 1272180, at *6.

However, even if the ALJ erred in failing to provide a more robust discussion of medical equivalence as it relates to Listing 1.02, any such error is harmless. As a preliminary matter,

Plaintiff admitted that her hands/wrists "are compromised, *but not to the extent that they meet the listing.*" *Plaintiff's Moving Brief*, ECF No. 15, p. 25 n.6 (emphasis added). Plaintiff nevertheless appears to suggest that she suffers the medical equivalent of Listing 1.02 by pointing to her severe impairments and obesity, asserting that she "has a *right to wonder* how well plaintiff can ambulate effectively during her periods of dizziness brought about by vestibular dysfunction or how her large body habitus places unsustainable stress on her two arthritic knees and the spinal disorders in her low back." *Id.* (providing no citations to the record) (emphasis added). Although Plaintiff goes on to point to a positive straight leg raising test and an EMG revealing carpal tunnel syndrome and bilateral peroneal nerve motor neuropathy in the lower extremities, she does not explain how this evidence establishes that she suffers the medical equivalent of Listing 1.02. *Id.* In short, Plaintiff simply speculates, without explanation or evidence, that she might have a combination of impairments that medically equals Listing 1.02. However, as previously explained, Plaintiff "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *See Sullivan*, 493 U.S. at 531 (emphasis in the original) (citations omitted). Based on the present record, Plaintiff has not persuaded this Court that this issue requires remand. *See id.*; *see also C.S. v. Comm'r of Soc. Sec.*, No. CV 19-20845, 2021 WL 5195702, at *4 (D.N.J. Nov. 9, 2021) ("But Plaintiff does no more than 'suggest' that she meets the listing: she does not provide any medical findings diagnosing anemia based on the blood test results and she does not provide any medical source evidence that her condition is medically equivalent to the Listing. . . . Indeed, without any such medical evidence, the Court cannot base a finding of medical equivalence on pure speculation from Plaintiff.") (citations omitted); *Cruz v. Comm'r of Soc. Sec.*, No. 18-cv-01071, 2019 WL 1650098, at *2 (D.N.J. Apr. 17, 2019) ("Plaintiff has not pointed to any medical evidence of equivalence. The ALJ could not have

properly found medical equivalence in the absence of evidence of medical equivalence. To argue

otherwise is to ask the ALJ to make a medical judgment *sua sponte*, which the ALJ may not

do.").

In short, and fairly reading the ALJ's decision as a whole, this Court concludes that

substantial evidence supports the ALJ's finding that Plaintiff's impairments neither meet nor

medically equal any listing, including Listing 1.02 and Listing 1.04, and that the ALJ's errors in

this regard, if any, were harmless.

### C.    RFC and Opinion Evidence

Plaintiff also argues that substantial evidence does not support the ALJ's RFC

determination. *Plaintiff's Moving Brief*, ECF No. 15, pp. 26–39. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations.

20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ

who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c),

416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir.

2011) ("The ALJ—not treating or examining physicians or State agency consultants—must

make the ultimate disability and RFC determinations.") (citations omitted). When determining a

claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d

422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations.

*Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d

607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a

limitation [that] is supported by medical evidence, but is opposed by other evidence in the

record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for

an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation

that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except: the claimant must use a cane in her dominant right hand for standing and walking. The claimant can never push, pull, or operate controls with her bilateral lower extremities, but she can occasionally push, pull, and operate controls with her bilateral upper extremities. The claimant can frequently handle, finger, and feel bimanually. The claimant can occasionally climb ramps and stairs, but she can never climb ropes, ladders, or scaffolds. The claimant can occasionally balance, stoop, and crouch, but she can never kneel or crawl. The claimant can never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle. The claimant must have access to a bathroom at her work site. The claimant is limited to performing simple, routine tasks and making simple work related decisions.

R. 233. In making this determination, the ALJ detailed years of record evidence regarding Plaintiff's physical impairments, including, *inter alia*, Plaintiff's hearing testimony that she requires a cane to ambulate; evidence that, prior to the period at issue, Plaintiff underwent arthroscopic surgery to repair a right knee meniscus tear; EMG testing that confirmed that Plaintiff had peripheral neuropathy; evidence in February 2015 that Plaintiff experienced chronic orthopedic pain affecting her lower back and right hip with radiation down her left lower extremity, following which she began physical therapy in June 2015 and her condition was noted to be improving; a September 2015 MRI which revealed evidence of degenerative disc disease; an April 2016 physical examination which revealed evidence of tenderness, muscle spasms, and reduced range of motion in her lumbar spine with mild tenderness in her bilateral knees, although Plaintiff retained the ability to ambulate with a normal gait and her motor, sensory and reflex skills remained intact in her bilateral upper and lower extremities; evidence that Plaintiff ended

30

physical therapy in October 2016 and that her muscle strength and range of motion had improved in her left knee, left hip, and lumbar spine; physical examinations in December 2016 and January 2017 during which Plaintiff exhibited evidence of normal bulk, tone and motor strength throughout her bilateral upper and lower extremities without any evidence of atrophy, her reflex and sensory skills were intact, her gait was normal, and she performed heel, toe, and tandem walking normally; a March 2017 x-ray of the cervical spine that revealed evidence of mild degenerative arthritis; August 2017 treatment records indicating that Plaintiff continued to report pain in her lower back that radiated down her lower extremities with intermittent numbness in her feet, but she denied experiencing hand pain or numbness; a physical examination that reflected reduced range of motion in her lumbar spine due to back pain and her body habitus and positive straight leg raise tests bilaterally, but during which Plaintiff ambulated with a steady gait and had full strength in her lower extremities with no evidence of sensory or reflex deficits and negative Tinnel's signs bilaterally; August 2017 x-ray evidence of Plaintiff's lumbar spine that revealed evidence of degenerative disc disease; an October 2017 physical examination that reflected evidence of tenderness in her left knee and during which she ambulated with a slight limp, but during which Plaintiff retained full range of motion in her left knee with no evidence of swelling; a subsequent MRI of her left knee that revealed evidence of a meniscal tear and a small knee joint effusion, for which Plaintiff was prescribed a left knee brace; further EMG testing that revealed evidence of bilateral carpal tunnel syndrome and bilateral peroneal nerve motor neuropathy in her bilateral lower extremities; January 2018 treatment records that reflected evidence of reduced range of motion in her bilateral knees and tenderness in her left knee, but which also indicated that Plaintiff retained full muscle strength in her bilateral lower extremities, her gait was normal with no limp, and she did not reveal any evidence of swelling, sensory, or

reflex deficits; Plaintiff's report in March 2018 of moderate orthopedic pain, for which she underwent further physical therapy from May to July 2018; June and July 2018 EMG testing that revealed evidence of a bilateral ulnar nerve motor neuropathy and peripheral neuropathy affecting her bilateral lower extremities; evidence in January and April 2019 of tenderness and pain during range of motion exercises in her cervical and lumbar spine with trigger points and tenderness in her right knee, although she retained full range of motion in her cervical and lumbar spine with intact motor and sensory skills in her bilateral upper and lower extremities; a January 2017 videonystagmography that revealed evidence of a right peripheral vestibular dysfunction following which Plaintiff underwent physical therapy from October through November 2017; an October 2018 videonystagmography that revealed evidence of a mild right peripheral vestibular dysfunction and Plaintiff's reported occasional dizziness in January 2019; the June 2017 diagnosis of psoriasis and with evidence of psoriatic plaques on her bilateral upper and lower extremities; treatment records from March 2018 through October 2018 which revealed that Plaintiff had done well on medication and her skin was significantly improving. R. 235–36.

As for Plaintiff's psychiatric impairments, the ALJ considered evidence of a diagnosis of an adjustment disorder; evidence from mental status examinations in December 2016 and February 2017 during which Plaintiff had an appropriate affect, her speech and behavioral skills were within normal limits, her thought processes were goal directed, and she exhibited intact judgment, concentration, recent and remote memory skills; Dr. Arrington's October 2017 consultative psychological examination which revealed that Plaintiff's mood was dysthymic and her affect was depressed, but she presented as cooperative and her manner of relating, social skills and overall presentation was adequate with good eye contact and intact speech skills, coherent and goal-directed thought processes, and normal concentration skills; and although

Plaintiff exhibited evidence of a mild impairment in her remote memory skills, her recent memory skills were intact, her intellectual functioning was assessed as average, her judgment skills ranged from fair toopoor due to mood fluctuations, and her insight was assessed to be fair. R. 236.

In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this determination on a number of bases. Plaintiff first contends that the RFC for sedentary work violates SSR 96-8p because the ALJ did not provide a function-by-function analysis. *Plaintiff's Moving Brief*, ECF No. 15, pp. 31–33. Plaintiff specifically complains that the ALJ made no findings regarding how long Plaintiff can sit, stand, walk; how much she can lift and carry; and whether these functions can be sustained throughout a typical 40-hour workweek. *Id*. at 32–33. The Court is not persuaded that this issue requires remand. Although an ALJ's RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[,]" SSR 96-8p, an ALJ is not required "to use particular language or adhere to a particular format in conducting [that] analysis[;]" instead, the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v*, 364 F.3d at 505; *see also Diciano v. Comm'r of Soc. Sec*., No. 1:18-CV-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) ("The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis.") (citations omitted). In this case, the ALJ detailed the record evidence in a narrative

discussion, considered Plaintiff's exertional and non-exertional functional limitations flowing

from her impairments, and crafted an RFC that reflected those limitations. R. 233−37. Notably,

the ALJ's discussion, detailed above, reflects that, when explaining why Plaintiff was capable of

performing a limited range of sedentary work, the ALJ implicitly concluded that Plaintiff could

sit for up to six hours in an eight-hour workday, could stand/walk for up to two hours in an eight-

hour workday, and could lift/carry up to 10 pounds. *Id.*; *see also* 20 C.F.R. §§ 404.1567(a),

416.967(a); SSR 83-10; *Granados v. Comm'r of Soc. Sec.*, No. CIV.A. 13-781 JLL, 2014 WL

60054, at *10 n.8, 9 (D.N.J. Jan. 7, 2014) ("Implicit in the ALJ's finding that Plaintiff could

perform sedentary work is the finding that Plaintiff could sit for six hours in an eight-hour

workday. . . . [and] that Plaintiff could stand for two hours in an eight-hour workday.") (citing

SSR 96–9p). Moreover, and based on this record, this Court also concludes that the ALJ

complied with the requirements of SSR 96-8p. *See Cosme*, 845 F. App'x at 134 ("Prior to

making his determination regarding Cosme's RFC, the ALJ reviewed the evidence in the record

as he discussed Cosme's physical and mental abilities and explained the evidence he relied upon

in reaching his decision and the weight accorded to it. Therefore, there is substantial evidence

that the ALJ properly considered Cosme's physical and mental abilities in a function-by-function

assessment prior to his RFC determination."); *Jones v*, 364 F.3d at 505; *Glass v. Comm'r of Soc.

Sec.*, No. CV 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("[T]he United States

Court of Appeals for the Third Circuit does not require an ALJ to perform a 'function-by-

function' analysis at step four, so long as the ALJ's RFC determination is supported by

substantial evidence in the record.") (collecting cases).

　　　　Plaintiff next challenges the limitation in the RFC that Plaintiff "must use a cane in her

dominant right hand for standing and walking." *Plaintiff's Moving Brief*, ECF No. 15, pp. 31,

33–34 n.9. The Court agrees with the Acting Commissioner that the nature of Plaintiff's challenge in this regard is not entirely clear. *Defendant's Brief Pursuant to Local Rule 9.1*, ECF No. 20, pp. 20–21 (citing *Plaintiff's Moving Brief*, ECF No. 15, pp. 33–34). However, the Court further agrees that Plaintiff appears to contend that the RFC requirement that Plaintiff carry a cane while standing and walking conflicts with unskilled sedentary jobs because "virtually [all] unskilled sedentary jobs require up to 2 hours of standing and walking while using both hands to perform tasks other than 1 handed lifting." *Plaintiff's Moving Brief*, ECF No. 15, p. 34 n.9; *see also Defendant's Brief Pursuant to Local Rule 9.1*, ECF No. 20, pp. 20–21. Plaintiff's argument is not well taken. As a preliminary matter, Plaintiff cites to no vocational or other authority to support this assertion about sedentary jobs. *See Plaintiff's Moving Brief*, ECF No. 15, p. 34 n.9. Conversely, SSR 96-9p instructs that "[s]ince most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Notably, SSR 96-9p further instructs that "[b]ilateral manual dexterity is needed when sitting but is not generally necessary when performing the standing and walking requirements of sedentary work." *Id.* at n.7. To the extent that Plaintiff further complains that the ALJ did not expressly find that Plaintiff was capable of lifting and carrying 10 pounds in one hand, that alleged error, if any, is harmless. Plaintiff specifically admitted at the administrative hearing that she could lift and carry 10 pounds with her left hand while using a cane in her right hand. R. 277. For these reasons, remand is not warranted on this basis. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553.

In continuing to challenge the RFC determination, Plaintiff argues that the RFC limitation for "*occasionally* push, pull and operate controls with her bilateral upper extremities" is inconsistent with the RFC limitation that Plaintiff can "*frequently* handle, finger and feel bimanually." R. 233 (emphasis added); *Plaintiff's Moving Brief*, ECF No. 15, pp. 31, 34–36. This Court disagrees. As a preliminary matter, Plaintiff again cites to no authority for this assertion. *See id.*; *see also Lett v. Saul*, No. CV 18-00164-B, 2019 WL 13218820, at *10 (S.D. Ala. Sept. 20, 2019) ("Plaintiff cites no authority in support of his foundational assumption, which essentially conflates the operation of hand controls with handling and fingering. . . . Thus, Plaintiff has given the Court no reasoned basis to conclude that a claimant's limitation to occasional operation of hand controls precludes his ability to perform frequent handling or fingering. Indeed, it appears to the Court that the ALJ properly treated handling, fingering, and operating hand controls as separate and distinct functions."). Notably, the vocational expert implicitly found no internal conflict in the RFC when he identified three sedentary jobs appropriate for a hypothetical individual with the RFC ultimately found by the ALJ. R. 288–89. The vocational expert also confirmed that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") except for responses addressing certain hypothetical limitations regarding elevating feet, time off-task, and absenteeism, for which the vocational expert relied on his professional experience. R. 292. Plaintiff's attorney, who had the opportunity to question the vocational expert and, in fact, interrogated this expert, did not ask him about the alleged internal inconsistency in the RFC limitations, nor did he otherwise challenge the vocational expert's credentials or his testimony. R. 285–93; *cf. Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 97 (3d Cir. 2004) ("Vocational expert testimony constitutes substantial evidence for purposes of

judicial review where the testimony is in response to proper hypothetical questions which fairly set out all of a claimant's impairments.").

Moreover, the applicable regulations distinguish pushing and pulling from handling. Specifically, exertional limitations are those that "affect [a claimant's] ability to meet the strength demands of jobs[,]" *i.e.*, "strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. §§ 404.1569a(a)–(b), 416.969a(a)–(b). Conversely, non-exertional limitations include, *inter alia*, "manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. §§ 404.1569a(c)(vi), 416.969a(c)(vi).

The Selected Characteristics of Occupations ("SCO") of the DOT similarly distinguishes using hand controls as relating to strength or exertional abilities, from manipulative functions such as handling and fingering. SCO, App'x C, Subsection 1b, c (identifying lifting, carrying, pushing, pulling, and using hard controls as physical demands related to strength); Subsections 9 and 10 (identifying, *inter alia*, handling and fingering under the heading "Absence or Presence of Other Physical Demand Components"). Social Security Rulings further confirm that operating hand controls relates to an exertional ability and not to a manipulative ability. *See* SSR 83-10, 1983 WL 31251, at *5 (1983) (defining exertional activity as "[o]ne of the primary strength activities (sitting, standing, walking, lifting, carrying, pushing, and pulling) defining a level of work"); SSR 85-15, 1985 WL 56857, at *7 (1985) (identifying postural-manipulative impairments as, *inter alia*, reaching, handling, fingering, and feeling).

For these reasons, Plaintiff's assertion that the RFC limitation for "occasional push, pull, and finger, and feel bimanually" does not conflict with the RFC restriction that Plaintiff can "frequently handle, finger, and feel bimanually[,]" R. 233. *See id*.; *see also Orlando P. v.*

*Comm'r of Soc. Sec.*, No. 21CV20186, 2022 WL 17820348, at *8 (D.N.J. Dec. 20, 2022)

(agreeing with the Acting Commissioner that the plaintiff improperly "conflates 'exertional'

capabilities, which include pulling, pushing, and operating hand controls, with 'manipulative'

functioning, which includes reaching" and concluding that "the two are distinct")

Finally, Plaintiff challenges the RFC limitation of performing simple, routine tasks and

making simple work-related decisions, arguing that the ALJ erred in failing to include additional

mental limitations opined by Jasmine Hayes, L.A.C., and Kim Arrington, Psy.D., including time

off-task and absenteeism. *Plaintiff's Moving Brief*, ECF No. 15, pp. 31, 36–38 (citing, *inter alia*,

R. 29 –91 (reflecting vocational expert testimony that an employer would not tolerate more than

a 10% off-task rate and would tolerate only one absence per month). Plaintiff's argument is not

well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,*

186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and

satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to

perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the

ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and

explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz,*

577 F.3d at 505–06; *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do

not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect

the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent

with his responsibilities under the regulations and case law."). Without this explanation, "the

reviewing court cannot tell if significant probative evidence was not credited or simply ignored."

*Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[8] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization;

---

[8] As previously noted, Plaintiff's SSI claim was filed on March 23, 2017.

and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In the present case, when crafting the RFC, the ALJ considered Ms. Hayes' opinions, explaining as follows:

> As for the opinion evidence, the undersigned considered Jasmine Hayes, LAC's opinions from September 2017 and November 2018[9] that the claimant had fair to good work abilities, but she would have a poor ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Ex. 40F, pgs. 2-4; 41F, pgs. 1-3). The undersigned gives this opinion significant weight because it is generally consistent with treatment records, which reflect that the claimant psychiatric impairment was stable and moderate with no hospitalizations, enabling her to perform unskilled work. (Ex. 3F, p. 5; 17F, pgs. 2-3; 22F, p. 7). However, there is no support in the evidence of record to support a poor ability to perform at a consistent pace without an unreasonable number and length of rest periods.

---

[9] The ALJ mistakenly identifies this opinion as dated in November 2018 instead of its actual date, January 15, 2018 R. 236, 1771–73.

R. 237. The court finds no error with the ALJ's consideration in this regard. *See* 20 C.F.R. §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4); *Sanchez v. Kijakazi*, No. 1:21-CV-36, 2022 WL 906046, at *12 (M.D. Pa. Mar. 28, 2022) (discussing with approval the ALJ's finding that "the state agency expert opinions were persuasive because those opinions were more congruent with [the claimant's] longitudinal treatment history in 2019, which was marked by conservative pain management treatment, test results which revealed only mild degenerative disc disease, and counseling" and that "as the ALJ aptly noted, there was no evidence of[,]" *inter alia*, hospitalization); *Bucci for & on Behalf of Eland v. Saul*, No. CV 19-368, 2020 WL 709516, at *6 (W.D. Pa. Feb. 12, 2020) (affirming denial of benefits where "more than a scintilla of evidence supports the ALJ's conclusions[,]" including, *inter alia*, that "Plaintiff exhibited stable mental health when he complied with medication"); *cf. Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) (concluding that, where the treating source's "medical opinion is contradicted by several pieces of evidence in the record and also contains internal inconsistencies, it is not entitled to the level of deference otherwise accorded to a treating physician's opinion"); *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) (concluding that the ALJ appropriately assigned limited weight to a treating physician's opinion where his "treatment notes, and in particular the treatment notes during the [relevant period], d[id] not support a finding that [plaintiff] was disabled at any time").

Plaintiff, however, complains that, despite assigning "significant weight" to portions of Ms. Hayes' opinions, the ALJ discounted this provider's opinion that Plaintiff has a poor ability to perform at a consistent pace without an unreasonable number and length of rest periods. *Plaintiff's Moving Brief*, ECF No. 15, pp. 37–38. Other than possibly suggesting that the ALJ improperly rejected the latter opinion because it "eliminates the possibility" that Plaintiff could

sustain work activity through an 8-hour workday and 40-hour workweek, Plaintiff does not point to any record evidence that undermines the ALJ's finding in this regard. *See id.* As this Court has already explained, it is Plaintiff's burden—not the duty of the Court—to point to evidence to support her arguments. *See Atkins*, 810 F. App'x at 129; *Claxton*, 766 F.3d at 307.

In an apparent attack on the ALJ's consideration of Ms. Hayes' opinions, Plaintiff contends that the ALJ inappropriately characterized Plaintiff's mental impairments as stable, arguing that stability was not a proper basis for discounting Ms. Hayes' opinion. *Plaintiff's Moving Brief*, ECF No. 15, p. 37 n.12 (citing *Nazario*, 794 F. App'x 204; *Morales*, 225 F.3d at 319). Plaintiff's argument is not well taken. As a preliminary matter, as detailed above, the fact that Plaintiff's symptoms were characterized as "stable" on medication was only one factor that the ALJ identified when explaining why he discounted one portion of Ms. Hayes' opinions. R. 237.

It is true that "stability does not equate to a specific medical condition. Indeed, someone can be stable with a chronic disabling malady or stable on a particular day or in a certain environment." *Nazario*, 794 F. App'x at 211. Similarly, the fact that a claimant is "stable and well controlled with medication" does not necessarily establish that a claimant can return to work. *Morales*, 225 F.3d at 319 (internal quotation marks omitted). In the present case, however, and unlike the reasoning of the ALJ in *Morales*, the ALJ "did not inappropriately reject the treating physician[s'] opinion[s] on the basis of credibility judgments, speculation, or lay opinion." *Torres v. Barnhart*, 139 F. App'x 411, 415 (3d Cir. 2005). Instead, as detailed above, the ALJ's "finding was based on the objective medical evidence contained in the psychotherapy treatment notes, and is not 'overwhelmed' by contrary evidence in the record." *Id.* (citing *Morales*, 225 F.3d at 320); *see also Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 121 (3d Cir.

42

2020) (finding ALJ was "entitled to discount" a treating source's earlier assessment "where it was undermined by the more 'detailed, longitudinal picture" provided by his later medical assessments[,]" which revealed that the claimant was "consistently calm and cooperative upon exam, and her prognosis was 'good'" and objective evidence supported the ALJ's finding that mental impairments did not prevent the claimant from engaging in substantial gainful activity where "she was consistently noted to be calm and cooperative, reportedly got along with immediate family, friends, and neighbors, could shop in stores by herself, attended community events, and had consistently normal findings with her cognition, memory, speech, judgment and insight"); *Hernandez v. Saul*, No. 4:19-CV-1263, 2020 WL 3412687, at *14 (M.D. Pa. June 22, 2020) ("Unlike in *Morales*, the ALJ in this case cited to evidence in the record including Plaintiff's mental health treatment records and the opinions of doctors Davis [consultative examiner] and Siegel [state agency reviewing physician] (to whose opinions he accorded great weight) before concluding that Plaintiff was not disabled. Accordingly, I am not persuaded that remand is required under *Morales*."); *Adorno v. Berryhill*, No. CV 15-4269, 2017 WL 6731623, at *10 (E.D. Pa. Dec. 29, 2017) (finding that substantial evidence supported the ALJ's decision where, *inter alia*, the claimant did not cast "doubt on medical records showing that when she participated in "active psychotherapy," she was "relatively stable" and that "[u]nlike in *Morales*, there is no medical evidence clearly supporting a finding that [the claimant] is unable to work. Rather, [the claimant's] medical records support the ALJ's finding that she is able to work, albeit with limitations"). For these reasons, Plaintiff has not shown that the ALJ erred in his consideration of Ms. Hayes' opinions.

 Plaintiff also challenges the ALJ's consideration of Dr. Arrington's opinion, which the ALJ addressed as follows:

On October 14, 2017, the claimant underwent a psychiatric consultative examination with Kim Arrington, Psy.D. (Ex. 17F). Upon mental status examination, the claimant's mood was dysthymic and her affect was depressed. (Ex. l 7F, p. 2). However, the claimant presented as cooperative and her manner of relating, social skills and overall presentation was adequate. (Ex. 17F, p. 2). In addition, the claimant exhibited good eye contact and her speech skills were intact. (Ex. l 7F, p. 2). Further, the claimant's thought processes were coherent and goal directed and her attention and concentration skills were normal. (Ex. 17F, pgs. 2-3). The claimant did exhibit evidence of a mild impairment in her remote memory skills; however, the claimant's recent memory skills were intact and her intellectual functioning was assessed to be in the average range. (Ex. 17F, p. 3). Moreover, although the claimant's judgment skills ranged from fair to poor due to mood fluctuations, and her insight was assessed to be fair. (Ex. 17F, p. 3).

R. 236.

The undersigned also considered Dr. Arrington's opinion from October 2017 that the claimant would have mild difficulty learning new tasks and performing complex tasks. (Ex. l 7F, p. 3). The undersigned gives this opinion great weight because it is generally consistent and supported by Dr. Arrington's consultative examination findings, discussed above. (Ex. l 7F, pgs. 1-3).

R. 237.

In challenging the ALJ's consideration of Dr. Arrington's opinion, Plaintiff contends that the ALJ engaged in prohibited cherry picking and failed to assign great weight to these findings by Dr. Arrington: "plaintiff's 'judgment ranges from fair to poor due to mood fluctuations' (Tr.965), that she had only fair insight, misses days of dressing, bathing and grooming and will have difficulty learning new tasks 'consistent with psychiatric problems which may significantly interfere with the claimant's ability to function on a daily basis' (Tr. 965)." *Plaintiff's Moving Brief*, ECF No. 15, p. 38. Plaintiff's argument is not well taken. As a preliminary matter, Plaintiff does not explain how these findings translate into work-related functional limitations. *See id.*; *cf. Kerdman v. Comm'r of Soc. Sec.*, 607 F. App'x 141, 144 (3d Cir. 2015) ("[S]ubstantial evidence supports the ALJ's conclusion that Dr. Frank's opinion was not well-supported, as Dr. Frank failed to reference any objective medical evidence supporting his statements of disability or

articulate any specific functional limitations suffered by [the claimant].”); *Nixon v. Comm'r of Soc. Sec.*, No. CV 18-1631, 2019 WL 4748058, at *1 (W.D. Pa. Sept. 30, 2019) (“Thus, as Dr. Tran's opinion did not include specific functional limitations and merely opined as to Plaintiff's limited employability, the Court finds that the ALJ did not err in giving little weight to that opinion in his analysis.”); *Akrigg v. Comm'r of Soc. Sec.*, No. CV 17-0237, 2018 WL 1378699, at *8 (D.N.J. Mar. 19, 2018) (rejecting the plaintiff's argument that the ALJ's grant of “partial weight” to the consultative examiner's “assessment failed to inform subsequent reviewers—*i.e.*, this Court—of the basis for the ALJ's weighing of the evidence” where “the ALJ clearly noted some deficiencies in [the consultative examiner's] examination, such as not assigning a specific functional limitation to Plaintiff that quantified her exertional capacity, which justify attaching less weight to [the] opinion”).

Moreover, Plaintiff simply points to this excerpt from Dr. Arrington's opinion without explaining why the RFC does not accommodate any limitation that Plaintiff believes Dr. Arrington articulated, nor does Plaintiff identify any additional functional limitations not already included in the RFC purportedly flowing from Dr. Arrington's report. *See id.* Plaintiff, who bears the burden at step four, *see Smith*, 631 F.3d at 634, simply has not established that the ALJ's failure to expressly weigh these portions of Dr. Arrington's opinion is anything other than, at most, harmless error. *See Shinseki*, 556 U.S. at 409–10; *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) (“[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.”). Accordingly, the ALJ's alleged error in this regard will not serve as a basis for

undermining the RFC and remanding this action. *See Pickerin v. Colvin*, No. 14-6130, 2016 WL 5745103, at *5 (D.N.J. Sept. 30, 2016) (affirming the ALJ decision where "Plaintiff does not offer any specific limitations that the ALJ should have included in the RFC assessment . . . [and b]ecause it is Plaintiff's burden to show that the ALJ's finding of residual functional capacity was not supported by substantial evidence, and Plaintiff has not identified any specific error").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the opinions of Dr. Arrington and Ms. Hayes.

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  August 18, 2023                        *s/Norah McCann King*
                                              NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE